**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CHARLES E. SAUTER** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:10CV-P720-H**

**DEFENDANTS**

**ALICIA BLOYD *et al.***

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff, Charles E. Sauter, a convicted inmate currently incarcerated at the Eastern Kentucky Correctional complex, filed this action against six individuals employed at the Kentucky State Reformatory (KSR), his former place of incarceration: (1) UA II Alicia Bloyd; (2) UA I William Palmer; (3) Lt. Dennis Grisham; (4) Case Worker Elaine Gaskin; (5) CO Jeff Faulkner; and (6) Warden Cookie Crews. He sues Defendants in both their individual and official capacities. He is seeking monetary relief under the Health Insurance Portability and Accountability Act of 1996 (HIPPA) and pursuant to 42 U.S.C. § 1983 for violations of his First, Eighth, and Fourteenth Amendment rights.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A. The Court will now proceed to conduct the required review of Plaintiff's complaint. After doing so, for the reasons set forth below, the

Court will dismiss Plaintiff's complaint.[1]

## II. FACTS

Plaintiff was incarcerated at KSR during all relevant time periods. From Plaintiff's complaint, it appears that he refused prison work assignments. Plaintiff contends that his refusal to work angered Defendant Bloyd, and that in retaliation she began "a campaign of harassment" against Plaintiff. Over a span of a few months, Defendant Bloyd forced Plaintiff to move ten times (seven times to segregation and three times from cell to cell within the same dorm). She then forced Plaintiff out of the psychiatric ward in direct contradiction of three psychologists' orders. Plaintiff alleges that some of the forced moves may have been made by Defendant Bloyd's assistant, Defendant Palmer. Plaintiff further alleges that on February 4, 2010, Defendant Grisham divulged Plaintiff's confidential medical status by including it on a write-up report investigation done in response to Defendant Bloyd's disciplinary charges against Plaintiff.

Plaintiff also states that Defendant Gaskins violated HIPPA by giving Plaintiff's medical information to other inmates in retaliation for Plaintiff's refusal to work and because he wrote a grievance against her because she told an inmate orientation group that they had to work at the prison.

Plaintiff alleges that Defendant Faulkner was responsible for packing Plaintiff's property up whenever he was sent to segregation. As a result "he visited his malcontent on Plaintiff's property by stomping, vandalizing, and throwing [it] away." Plaintiff states that Defendant

[1]The Court notes that it is required to screen Plaintiff's complaint before service even though he paid the filing fee. The statute provides: "The court shall review, before docketing, if feasible, or in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity." 28 U.S.C. 1915A(a).

Bloyd then convinced Defendant Faulkner to make false allegations against Plaintiff. This caused Plaintiff to be convicted in a prison disciplinary proceeding and to spend twenty-nine days is segregation "on a category one warning and reprimand."

Finally, Plaintiff complains that Defendant Bloyd's systematic campaign against him has caused a domino effect. This has culminated in Plaintiff being "stalked, menaced and smeared with false allegations and hysteria . . . transdermally poisoned, sickened and weakened through the secretive workings of a black gang that has targeted Plaintiff because when his memories flooded back in early 2000 he began sounding the alarm of their pernicious, carnal doping and pseudo mind-controlling clandestine activity using an arsenal of drugs."

He contends that Defendant Crews should be liable because she allowed the above described events to "happen unimpeded with deliberate indifference."

## III. ANALYSIS

### A. HIPPA

In general, HIPPA governs confidentiality of medical records and regulates how covered entities can use or disclose individually identifiable medical information about an individual. 45 C.F.R. § 164.512. However, HIPPA regulations do not confer a private right of action on an individual. Aggrieved individuals may lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, who has the discretion to investigate the complaint and impose sanctions, both civil and criminal. *See* 42 U.S.C. § 1320d-5. State attorney generals may also sue on behalf of residents of their states aggrieved by alleged HIPPA violations. *Id.* An individual, however, cannot maintain a private suit in his own name for a violation of HIPPA. *See Holland v. Aegon U.S. Corp.*, No. 3:07CV-298-S, 2008 U.S. Dist. LEXIS 53298 (W.D. Ky. July 11, 2008) (citing *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir.

2006)). For these reasons, Plaintiff fails to state a claim for the alleged infringements of his HIPPA privacy rights.

**B. 42 U.S.C. § 1983**

Section 1983 provides a federal forum for injured parties to seek a remedy for the deprivation of their civil liberties. 42 U.S.C. § 1983; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, (1989). "To state a valid § 1983 claim, Plaintiff must establish that: (1) he was deprived of a right secured by the Constitution or the laws of the United States, and (2) the deprivation was caused by a person acting under the color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (internal quotations omitted). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Id.*

**1. Official-capacity claims**

Plaintiff sued each Defendant in his/her official capacity. Each Defendant is an employee of the Kentucky Department of Corrections. The Kentucky Department of Corrections is a department within the Justice and Public Safety Cabinet of the Commonwealth of Kentucky. Exec. Order No. 2004-730 (July 9, 2004); Ky. Rev. Stat. Ann. § 12.250. A state, its agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will*, 491 U.S. at 71. Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. *Id.*; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity.").

**2. Individual-capacity claims**

**a. Eighth Amendment**

Although not entirely clear, Plaintiff appears to allege that his repeated cell transfers, his time in segregation, and the fact that he was moved out of the psychiatric unit violated his rights under the Eighth Amendment. He claims the results of these unwanted moves caused "affects on him" that last to this day. He does not explain the nature of the "affects."

To state a cognizable Eighth Amendment claim, an inmate must allege that he has been deprived "of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) "[E]xtreme deprivations are required to make out a conditions-of-confinement claim [under the Eighth Amendment]. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)). Thus, Defendants did not violate Plaintiff's rights by transferring him to segregation or by moving him from cell to cell.

Theoretically, moving Plaintiff out of the psychiatric unit could cause an Eighth Amendment violation, if the move caused a denial of necessary medical care. However, Plaintiff did not allege any such denial. Additionally, he states only that the moves "affected" him, a vague, unsupported assertion. Plaintiff does not allege any actual physical injury. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility,

for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *Harden-Bey*, 524 F.2d at 796 (citing *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145-46 (6th Cir. 2002)).

**b. First Amendment**

A prison inmate may bring a retaliation claim under the First Amendment where he alleges "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by [his] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Reading Plaintiff's complaint broadly, the Court infers that the protected conduct at issue is Plaintiff's refusal to work and the ensuing grievances he filed related thereto. "Inmates do not have a constitutional right to refuse to work and refusing to work is not the exercise of a specific constitutional right and cannot form the basis for a retaliation claim." *Walters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). While grievance writing does constitute protected conduct, Plaintiff has failed to connect the adverse action taken against him (Defendant Gaskins divulging his private medical information to other inmates) to the protected conduct. Thus, he has failed to state a retaliation claim. *See Robbins v. Black*, 351 F. App'x 58, 63 (6th Cir. 2009) ("However, in his original complaint, [the plaintiff] did not allege facts indicating a causal link between his invocation of the prison's grievance procedure and his transfer, nor did he explain the extent to which the transfer adversely affected him or impeded his appeal.").

Plaintiff has failed to state a valid retaliation claim under the First Amendment.

**c. Fourteenth Amendment**

It appears that Plaintiff is alleging that two distinct actions by Defendant Faulkner violated his Fourteenth Amendments rights: 1) destruction of his property and 2) filing "trumped up" charges against him that resulted in him being sentenced to twenty-nine days in segregation. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Paired v. Taylor*, 451 U.S. (1981), *rev'd. on other grounds by*, *Daniels v. Williams*, 474 U.S. 327 (1986). An inmate may, however, bring a due process claim without showing that the state possesses an adequate postdeprivation remedy where the state employee deprived the prisoner of property, pursuant to "an established state procedure." *Id.* at 534. In those circumstances, the Supreme Court opined that the state can provide a predeprivation hearing. *Id.* Yet, under this rationale merely because the individual employee himself may foresee the intentional deprivation, his foresight alone is simply insufficient to hold the state itself liable. Rather, "[t]he controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id.* The Sixth Circuit has, thus, held that to prevail on a procedural due process claim, a plaintiff must

(1) demonstrate that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). An inmate has the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983). Kentucky's

statutory remedy for such losses has been deemed adequate. *Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Here, Plaintiff failed to meet his burden. He does not allege that the deprivation occurred as a result of an established policy. While he claims that Defendant Faulkner intentionally deprived him of property without due process, he fails to show that he does not possess an adequate postdeprivation remedy to redress this wrong. Plaintiff has failed to state a cognizable claim under either theory of recovery. The Court will, therefore, dismiss his Fourteenth Amendment claim premised on the deprivation of his property.

Likewise, Plaintiff has failed to state a claim against Defendant Faulkner based on the "trumped up" charges. From a review of the exhibits, it appears that an investigation into the charge was conducted, and Plaintiff was provided due process in the form of a hearing. "False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing." *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004).

**d. Defendant Crews**

Even if Plaintiff had alleged a cognizable constitutional violation by one of the other Defendants, his individual-capacity claim against Defendant Crews would fail. He alleges only that she was the warden in charge at the time of the alleged violations and failed to stop them. "Respondeat superior[2] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based

---

[2]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, Defendant Crew's position as warden does not automatically make her liable for the actions of her subordinates.

## IV. CONCLUSION

For the reasons set forth above, the Court will enter an Order dismissing this action.

Date: December 15, 2010

**John G. Heyburn II, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel

4412.008